WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Helen Schirmer,

    Plaintiff,

v.

Avalon Health Care Incorporated, et al.,

    Defendants.

No. CV-15-01550-PHX-GMS

**ORDER**

Pending before the Court is Defendant Avalon Health Care Incorporated's ("Avalon") Motion for Summary Judgment. (Doc. 61.) For the following reasons, the Court grants the motion.

**BACKGROUND**

Plaintiff Helen Schirmer ("Mrs. Schirmer") is the widow of Carl Schirmer, who suffered a hip fracture after falling at his nursing home facility, Avalon Care Center–Shadow Mountain ("Shadow Mountain"). (Doc. 64 at 3; Doc. 72 at 2.) As a result of his fall, Mr. Schirmer was admitted to Scottsdale Health Care Shea Hospital to undergo surgery on his hip. (Doc. 72 at 3; Doc. 64 at 3.) Mr. Schirmer passed away soon after his hip surgery. (Doc. 72 at 3; Doc. 62 at 4.) Ms. Schirmer alleges that his fall and subsequent death is the result of Avalon's "negligence, carelessness, and breach of duty." (Doc. 1, Ex. A at 5.)

Avalon "owns a company that is the great-grandparent company" of Shadow Mountain.[1] (Doc. 62 at 2, Ex. A at 2.) Mrs. Schirmer alleges that while Shadow Mountain was the entity that provided the care to Mr. Schirmer, Shadow Mountain was effectively controlled by a separate "corporate" entity that made hiring, salary, equipment and other budget decisions. Schirmer fails to identify this "corporate" entity in any of the motion papers, and none of her witnesses actually testify that Avalon is the corporate entity to which they answered. (Doc. 64.) Avalon asserts that there is no evidence to suggest that it is the corporate entity making these decisions on behalf of Shadow Mountain. (Doc. 61 at 2.) However, it acknowledges that it provides some medical forms to various Avalon facilities, including Shadow Mountain. (Doc. 72 at 3; Doc. 64 at 4.) Avalon filed this motion for summary judgment to assert that Mrs. Schirmer's case against it should be dismissed because 1) Avalon did not provide any care to Mr. Schirmer and 2) Mrs. Schirmer failed to provide any evidence to support her alter ego theory of liability. (Doc. 61.) Alternatively, Avalon asserts that wrongful death and negligence claims (counts one, two and four) must be dismissed under Arizona law because Plaintiff failed to provide an expert opinion sufficient to meet the requirements of A.R.S. § 12-563. (Doc. 61.)

**DISCUSSION**

**I. Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] Substantive law determines which facts are material and "[o]nly disputes over

---

[1] Plaintiff objects to this without any justification beyond the claim that it is "not supported by the record." (Doc. 64 at 2.) However, Avalon presented a signed declaration from the vice president of Avalon, Mr. John Teague, testifying that Avalon "owns a company that is the great-grandparent of Shadow Mountain." (Doc. 62, Ex. A at 2.) Therefore, the Court accepts Mr. Teague's claim as undisputed. *See* Fed. R. Civ. P. 56(c) (outlining the proper procedures for asserting that a fact cannot be or is genuinely disputed).

[2] The Court has jurisdiction over this case pursuant 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions

1 facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Although "[t]he evidence of [the non-moving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor," the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment," and evidence must be authenticated before it can be considered. *Orr v. Bank of Am.*, 285 F.3d 764, 773–74 (9th Cir. 2002).

/ / /
/ / /
/ / /

---

where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Avalon admits that it is a Utah Corporation although it denies that it is authorized to do business in Maricopa, County.

## II. Analysis

Mrs. Schirmer alleges that Avalon's actions amount to malpractice as well as a violation of Arizona's Adult Protective Services Act ("APSA").[3] Because Mrs. Schirmer cannot establish that Avalon provided care to Mr. Schirmer, and has failed to establish liability based on alter ego under Arizona law, her claims are dismissed.

### A. APSA and the Definition of Care

APSA provides a cause of action for "vulnerable adult[s] whose life or health is being or has been endangered or injured by neglect, abuse or exploitation" to obtain damages against "any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct." A.R.S. § 46-455(B). Therefore, to obtain relief, the plaintiff must demonstrate that the defendant was providing care to Plaintiff's decedent. *Id.* APSA itself does not define the term "care," but Arizona courts have ruled that the term should be interpreted according to its ordinary meaning. *See In re Estate of Wyatt*, 235 Ariz. 138, 140, 329 P.3d 1040, 1042 (2014) ("We disagree that 'provide care' is ambiguous. Although APSA does not define the term, we construe it according to its common meaning."). "'Care' is ordinarily understood to mean 'CHARGE, SUPERVISION, MANAGEMENT: responsibility for or attention to safety and well-being.'" *Id.* at 140 (quoting Webster's New Int'l Dictionary 338 (3d ed. 1976)).

In *Corbett v. ManorCare of Am., Inc.*, 213 Ariz. 618, 146 P.3d 1027 (Ct. App. 2006), the Court of Appeals of Arizona addressed whether employees of a parent

---

[3] Where diversity jurisdiction exists, the substantive law of the state in which the district court sits will determine which state's law applies. Because this action is an Arizona state law claim that was brought in this Court based on diversity jurisdiction, Plaintiff's state law tort claims are governed by Arizona law. *See, e.g., Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99, 107–08 (1945). However, the procedural aspects of the claims, including summary judgment and pleading standards, will be governed by the Federal Rules of Civil Procedure. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003) ("The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal.")

corporation that had no personal interaction with the patient at issue could be sued under APSA. *Id.* It ruled that the trial court did not err in granting summary judgment on behalf of the employees of the parent corporation that had no interaction with the patient, because they "were not even in the State of Arizona at the time of [the plaintiff's] stay at the facility," "were not employed by any of the subsidiaries," "never met, spoke to, or had any personal contact with Ms. Loucks," and "they had no personal knowledge" of the plaintiff "her condition, her care, or her treatment while she was a patient at the facility." *Id.* at 639 (internal quotations and citations omitted). By contrast, employees of the subsidiary that worked on property while the plaintiff was admitted there and were aware of her presence could be held liable under APSA. *Id.*

Throughout this case, Avalon has denied that it provided any care to the Plaintiff. It has acknowledged that it is a corporate parent, apparently many times removed, of the entity that did provide such care. But, as *Corbett* demonstrates, such a relationship is insufficient to give rise to liability in the corporate parent for violation of the APSA. Plaintiff has failed to establish that Avalon actually provided the care at issue here as opposed to one of Avalon's subsidiaries. Nothing in the record suggests that Avalon had any reason to be aware of Mr. Schirmer's presence at Shadow Mountain. Furthermore, there is no evidence indicating that Avalon or its staff had any personal knowledge of Mr. Schirmer, his condition, or his care. (Doc. 62 at 2, Ex. A at 2.) These responsibilities fell to Shadow Mountain. (*Id.*) Therefore, as in *Corbett*, summary judgment is properly entered for Avalon as to the APSA claim. *Corbett*, 213 Ariz. at 639.

### B. Alter Ego Liability

Mrs. Schirmer also attempts to hold Avalon liable for Shadow Mountain's general treatment of Mr. Schirmer for both negligence and APSA violations, under an alter ego theory of liability. Generally, a corporation will not be liable for the actions of its subsidiary. *Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 73, 375 P.3d 1173, 1182 (Ct. App. 2016), *review denied* (Jan. 10, 2017) ("A corporation will be treated as a separate entity unless sufficient reason appears to disregard the corporate form."). However,

"when a subsidiary corporation is merely the parent corporation's alter ego and when observing the corporate form would work an injustice, a court may properly 'pierce the corporate veil' and hold the parent corporation liable for the acts of its subsidiary." *Id.* To allege alter ego liability under Arizona law, the plaintiff must establish that "unity of control exists and that observance of the corporate form would sanction a fraud or promote injustice." *Id.*

"Unity of control exists when the parent corporation exercises 'substantially total control over the management and activities of the subsidiary.' " *Id.* (quoting *Taeger v. Catholic Family & Cmty. Servs*, 196 Ariz. 285, 297, 995 P.2d 721, 733 (Ct. App. 1999)). A variety of factors are considered when determining whether unity of control exists, including whether the two entities share "common officers or directors," if the parent finances the subsidiary, "the parent's payment of the subsidiary's salaries and other expenses, the subsidiary's failure to maintain formalities of separate corporate existence, the similarity of the parent's and the subsidiary's logos, and the opposing parties' lack of knowledge of the subsidiary's separate corporate existence." *Id.*

"A fraud or injustice arises if observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights, while allowing the party responsible to evade liability." *Id.* at 75. Intentional undercapitalization of a subsidiary corporation "is an important factor in determining whether the doctrine of alter ego should be applied," although it is "not an absolute ground for disregarding a corporate entity." *Ize Nantan Bagowa, Ltd. v. Scalia*, 118 Ariz. 439, 443, 577 P.2d 725, 729 (Ct. App. 1978). The key inquiry is whether the "financial setup of the corporation is only a sham." *Id.*

Mrs. Schirmer has not established an issue of fact as to whether Avalon is Shadow Mountain's alter ego. The evidence in the record reflects that Avalon owns the corporate great grandparent of Shadow Mountain. (Doc. 62, Ex. A at 2.) Although Mrs. Schirmer points to deposition testimony that indicates that an unidentified "corporate" entity controlled Shadow Mountain's salary and budget decisions, there is no evidence that

establishes that Avalon is that corporation. (Doc. 64, Ex. 5.) Shadow Mountain's staff members are not employees of Avalon, and Avalon did not provide any staff to supervise Shadow Mountain's activities. (Doc. 62, Ex. A.) Although Avalon did share some forms with Shadow Mountain, this fact, standing alone, is insufficient to rise to the level of creating a genuine issue of material fact for the jury.

Furthermore, the record is devoid of any evidence that a fraud or injustice would arise by observing the corporate form in this case. Although Shadow Mountain did use some forms provided by Avalon during its treatment of Mr. Schirmer, the admission agreement specifically notes that all care provided to Mr. Schirmer would be provided by Shadow Mountain. (Doc. 64, Ex. 10 at 1.) Furthermore, there is no indication that the "financial setup of the corporation is only a sham." *Ize Nantan Bagowa, Ltd.*, 118 Ariz. at 443. Mrs. Schirmer failed to present any evidence to support a finding of liability under an alter ego theory, and thus summary judgment is properly granted for Avalon

**C. The Malpractice Claims**

Arizona law provides that "[a] medical malpractice action shall not be brought against a licensed health care provider except upon the grounds set forth in § 12-561." A.R.S. § 12-562. Section 12-561 defines a medical malpractice action as

> an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services or for the rendering of such health care, medical services, nursing services or other health-related services, without express or implied consent including an action based upon the alleged negligence, misconduct, errors or omissions or breach of contract in collecting, processing or distributing whole human blood, blood components, plasma, blood fractions or blood derivatives.

A.R.S. § 12-561(2). Given this definition, Ms. Schirmer's claims in Counts One, Two and Four are medical malpractice claims.

/ / /

To assert a medical malpractice action, a plaintiff must establish that 1) "[t]he health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which he belongs within the state acting in the same or similar circumstances" and 2) "[s]uch failure was a proximate cause of the injury." A.R.S. § 12-563. Demonstrating proximate cause generally requires expert testimony. *See Rasor v. Nw. Hosp., LLC*, 239 Ariz. 546, 549, 373 P.3d 563, 566 (Ct. App. 2016) ("Expert medical testimony is also generally required to establish proximate cause unless a causal relationship is readily apparent to the trier of fact.").

Under Arizona law, if a plaintiff submits a claim against a health care professional, the plaintiff must "certify in a written statement that is filed and served with the claim or the designation of nonparty at fault whether or not expert opinion testimony is necessary to prove the health care professional's standard of care or liability for the claim." A.R.S. § 12-2603(A). If such a certification is necessary, then "the claimant shall serve a preliminary expert opinion affidavit with the initial disclosures that are required by rule 26.1, Arizona rules of civil procedure." A.R.S. § 12-2603(B). The affidavit must contain:

> 1. The expert's qualifications to express an opinion on the health care professional's standard of care or liability for the claim.
>
> 2. The factual basis for each claim against a health care professional.
>
> 3. The health care professional's acts, errors or omissions that the expert considers to be a violation of the applicable standard of care resulting in liability.
>
> 4. The manner in which the health care professional's acts, errors or omissions caused or contributed to the damages or other relief sought by the claimant.

*Id.*

Therefore, a plaintiff's preliminary expert opinion affidavit needs to establish that the medical provider's breach in its duty of care proximately caused her injury. *See*

*Gorney v. Meaney*, 214 Ariz. 226, 231–32, 150 P.3d 799, 804–05 (Ct. App. 2007) ("Thus, Gorney's expert opinion affidavit should have stated that the surgery proximately caused an injury to Gorney, e.g., the 'worsen[ed]' condition in Gorney's knee. Because it did not, the trial court properly found the requirements of § 12–2603(B)(4) were not met."). Failure to comply with the preliminary expert opinion requirement can result in a dismissal of a plaintiff's case at the summary judgment phase. *See id.* (affirming summary judgment for the defendant based on the plaintiff's failure to comply with A.R.S. §12-2603(B)).

Mrs. Schirmer failed to comply with §12-2603(B), and thus her claims are dismissed. Dr. Roraback-Carson is the only physician that submitted a preliminary expert opinion affidavit in this case, and it did not comply with the statute because it failed to include that Avalon's breach in its duty of care proximately caused Mr. Schirmer's death.[4] Dr. Roraback-Carson's declaration reported that "[a] hip fracture in this setting of a man with multiple underlying medical conditions is associated with high morbidity and mortality," but it did not explain how Avalon's negligence was the proximate cause of Mr. Schirmer's death.[5] (Doc. 62-1 at 7.) Therefore, Mrs. Schirmer has failed to establish a prima facie case for Counts One, Two, & Four, and these claims are dismissed.

---

[4] The case management order required Mrs. Schirmer to "provide full and complete expert disclosures" by April 29, 2016. (Doc. 15 at 2.) The only expert that was submitted by this deadline was Dr. Roraback-Carson, and thus she is the only expert witness that this Court will consider on summary judgment. *See Orr v. Bank of Am.*, 285 F.3d at 773–74 ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). Dr. Kevin Horn did not submit any report or affidavit until December 2, 2016. (Doc. 64-2 at 51.) This is far beyond the deadline imposed by the Court for expert disclosures, and months beyond the deadline to complete all expert depositions, which was on September 23, 2016. (Doc. 15 at 3.) Therefore, his report will not be considered. Likewise, the certificate of death does not satisfy the statutory definition of a preliminary expert opinion affidavit, and therefore it cannot salvage Mrs. Schirmer's claims either. A.R.S. § 12-2603(B).

[5] Dr. Roraback-Carson's deposition transcript also reflects that Mr. Schirmer's death was caused by "aortic dissection." (Doc. 62-1 at 10.) Therefore, in the absence of an explanation as to how the Defendants were responsible for the aortic dissection, the plaintiff does not establish a prima facie case for her claims even without the statutory requirement.

## CONCLUSION

Mrs. Schirmer failed to present any genuine factual issues that could be "resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc.*, 818 F.2d at 1468. Even when the evidence is viewed in the light most favorable to Mrs. Schirmer, her claims remain unsupported by the undisputed facts of the record, and therefore Avalon is entitled to summary judgment.

**IT IS THEREFORE ORDERED** that Avalon's Motion for Summary Judgment, (Doc. 61), is **GRANTED**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this lawsuit and enter judgment accordingly.

Dated this 9th day of May, 2017.

*/s/ G. Murray Snow*
Honorable G. Murray Snow
United States District Judge